And now, Mr. Fischer. Good morning. My name is Lawrence Fischer. I represent the appellant in this case, Tanya Nicole Kach, and I respectfully request three minutes for rebuttal. We request that this honorable court reverse the district court's grant of summary judgment and remand this matter for proceedings on the merits because the district court did not apply controlling principles of equitable tolling and accrual. What is your client's injury here? Specifically, what is it for which she seeks damages? Well, she was molested repeatedly on school property by a public school security guard who abused his power, and then this pedophile thereafter interfered with the custodial rights of Ms. Kach's family, and he held her in total isolation beyond the remainder of her childhood by controlling her every moment, threatening her life, and making her into a sex slave. These extreme circumstances, imaginable, were not adequately considered by the district court as a consequence of what she endured by this public school security guard on school grounds. She was deprived of her education. She was deprived of her liberty. She was deprived of her bodily integrity. These are all grave constitutional violations, rights secured to her under the United States Constitution. And so it was, in our view, error for the lower court, the district court, to overlook genuine factual dispute about Ms. Kach's inability to resort to authorities under such unimaginable circumstances. Is it your position that Ms. Kach's claims accrued as of the day she was taken from Mr. Hose's residence? It is difficult to determine exactly when she knew of her injury and the cause of her injuries, which is... She is in a unique position to make that determination vis-à-vis everybody else, isn't she? As a child, when she was molested at the age of 14 and held in total isolation for beyond the remainder of her childhood, certainly she's in the only position, perhaps, to recognize or not recognize her injuries. But she did not recognize her injuries or the cause of those injuries until, in March of 2006, she was rescued from her ordeal and her father contacted a lawyer. You say she... Just a few moments ago you said it was impossible for her to know the cause of these injuries? Correct, Your Honor. I mean, she has to understand that she's been injured, first of all, and we submit that a 14-year-old child cannot, as a matter of simple truth... We're talking about, or I'm talking about, in the District Court rule, in the basis of the statute of limitations. So we have a moving period of time here. She was 14 throughout this entire period of time. That's the point. We have an undisputed, unrefuted, eminent expert report which states that her developmental situation was stilted, stunted, arrested. She was the victim of vicious, heinous, criminal acts. You're not arguing to a jury now, so limit yourself to the arguments based on the legal questions. Well, and it's a passionate case, Your Honor. The circumstances are the most extreme imaginable. And we question how the District Court could find that she could have gone to authorities and sought out authorities when she was totally controlled by an adult who subjugated her free will. Mr. Fisher, you've done an excellent case in your brief. Your brief was very well done. I'm sure you have provided, Ms. Katch, excellent representation throughout all of this. But we're bound to follow certain laws and rules, just as the District Court was. And what case, and we're bound to follow the case law that came before this case, which case or cases kept your client's claim alive so that it falls within that two-year statute of limitations? There's no dispute there's a two-year statute of limitations, correct? No, there's no dispute that there's a two-year statute of limitations. It's just a question of whether it accrues or was that statute told? Correct. Which case or cases helped your client keep this case alive? Well, the case decided by this very panel, the case of Miller v. Philadelphia Geriatric, where an adult had the mental capacity of a child and no guardian. And here we have the same situation. While Ms. Katch may have technically evolved into adulthood as a temporal matter, mentally she did not. And she had no guardian and, in fact, you have a criminal act interfering with her guardianship. Now, this case is a little bit different than Miller in that the state actor, Thomas Hose, did not cause the incapacity. What about the difference between the mental conditions of Miller and the mental conditions of Ms. Katch? Are there not some variations there? That Henry Miller was four years old mentally and Ms. Katch was 14 years old? And the cause of the difference? Well, in Miller, the government action didn't cause the incapacity of Henry Miller. Just like here in Katch, Thomas Hose didn't cause her to be 14 years old. She just was. The departure occurs in that it was the government actor, Thomas Hose, who then extenuated or attenuated her incapacity. In other words, she was never allowed to evolve past her capacity. We also see that the case of Lake v. Arnold, which deals with the issue of tolling, where circumstances beyond Ms. Katch's control have prevented her from coming forward with her claim, but that she promptly came forward with her claim after she was able to escape these extreme and unimaginable circumstances. We feel that the lower court failed to adequately apprehend these extreme circumstances. I mean, where a child is repeatedly raped, tormented, threatened with her life, and totally controlled from the age of 14 onward, you don't just snap out of that when you turn 18. It's just not this automatic moment where you're okay and you're better. Now, after she's had a lot of counseling and a lot of therapy and she's no longer being subjugated, she's able to adequately get up to speed and figure out what's happened to her and who did it to her and what she can do to overcome and to redress, which is the whole point of Section 1983. It's deterrence, to deter state actors, public school security guards from molesting students, and to compensate. And what's different about this case than Miller is that Miller didn't have a 1983 claim involved with it. Miller was a federal torts claim action where you're just talking about negligence as opposed to the wanton acts that we're talking about here. And here, make no mistake, you have a public school security guard, and we submitted the case of Salazar to you, which is for the common sense proposition that a public school security guard is a state actor, whether privately contracted or not. Here, the school district delegated vast authority to Thomas Hose with deliberate indifference to his lack of training and his lack of supervision. Now they want to delegate responsibility for his egregious acts and theirs. You can delegate authority, but you can't delegate responsibility. And to hold otherwise would be a dangerous precedent. It would make our students, our children, less safe in our schools if the holding were to stand that a public school security guard can commit private crimes by the misuse of his authority against a student in a school environment. At the very least, Thomas Hose is a state actor, and the school district is culpable under Section 1983 for failing to train and supervise him. I was assuming you kept your claim a lot. Assuming the law keeps our claim a lot. I want to keep you on that issue a second. Sure. You cited a couple of federal cases. Is there anything in Pennsylvania state law, if state tolling is applied, that helps you keep this alive? And what's your theory? What's your best theory? Fine versus Checkio, and that case talking about the flexibility of the state law to deal with situations that arise. And I believe fine was discussed in the Miller case. Also, the statute was changed. The Pennsylvania statute was changed in 2000 to give my client- 2002, was it? 2002. The 12 year- Ms. Katch's claim would have had to have been alive in the prior two years. Correct. Because it did not-that statute did not revive stale claims. It only extended claims that were alive. That's correct. We argued, and we made this argument in our brief, I think, fairly explicitly, that under the school district's rationale, that she knew around the year 2000 that it was wrong for a 37-year-old man to be with a 14-year-old girl. We're not suggesting that that's knowledge of her injury, but if the court holds that it is knowledge of her injury, then it's still-her claim wasn't revived, as we argue in our brief. It was still pending. If we agree with you on any of the statute of limitations questions, should we look at the merits, or should-since the district court didn't look at them, should we send it back? The only-we would ask this court, in the essence of judicial economy, to look at the immunity issues, because they just would be immediately appealable anyway. And so since they've been raised in a massive footnote in the city's brief, we would ask that the court at least visit that issue so that it's-we're not back here automatically regardless. Thank you very much. We'll have you back on rebuttal. Thank you, Your Honor. Good morning, Your Honor. May it please the court, my name is Russell Lucas. I represent, in this case, the McKeesport Area School District, its school board, various current or mostly retired school employees, collectively referred to as the school district's defendants. I'll be going first and taking ten minutes and addressing specifically the statute of limitations-related issues on which Judge Lancaster granted summary judgment. We also have an issue that we raised in the court below concerning state-created danger in our belief, our position that the plaintiff, as a matter of law, cannot prevail on that claim. Based on the record, if I don't have any time, we'll simply rest on our briefs with regard to that issue. Concerning-and the undisputed salient facts, I believe, are correctly stated in the record, so it's-I don't want to respond too much to the characterization of them, but simply the-with regard to the allegation that there was molestation on school grounds, the facts indicate that there was. Both Plaintiff Tanya Katchen and Mr. Hose indicated that they would kiss in private areas, but that's the extent of it. I don't want to get belabored by that, but I do want to go right to the issues that we raised concerning the statute of limitations. The-Ms. Katchen's arguments in this case,  of the two-year statute of limitations and overturn Judge Lancaster's findings, are really rested on these two cases, Miller from this panel and the Lakeview-Arnold case, both of which the court made-went to great pains to state that these were unique sets of facts, narrow holdings, and they relate specifically to plaintiffs who are found to be mentally disabled, and there's no question as to the mental incapacity of those plaintiffs. That's not this case in any way, shape, or form. Judge Lancaster found that the cause of action in this case, specifically with regard to the school district defendants, her cause of action, the injury, the bad act caused by the school district, it's alleged, is its failure to discover or stop the beginnings of the relationship between Katchen and Hose, which occurred while she was attending school in Keysport in October of 95 through February of 96, before she ran away from home and took up residence with Mr. Hose. The facts that she pleads, the facts that keep out in discovery concerning what various school officials knew or should have known, the occurrences that they allege took place on school grounds, those all took place in 95, 96. There's no indication that she knew about those at any time afterwards, and so Judge Lancaster made the common-sense determination that her claim accrued with regard to the school district in 1996. Mr. Luke, it's on the statute of limitations question. In your opinion, should federal tolling or state tolling apply here? State tolling typically applies. The only exception would be under equitable tolling, and we think that the circumstances in Lakeview-Arnold don't apply here. Aren't the facts, as alleged in this case, extraordinary, and aren't there extraordinary circumstances here that would allow federal tolling to apply? With all due respect, there are certainly unusual facts, and we won't come across a fact pattern like this again, but I don't think that they warrant the extraordinary relief afforded by this panel in Miller and by the Third Circuit in Lakeview-Arnold. They're strange facts, but, you know, certainly with regard to any emphasis, as counsel places in his brief on the fact that Ms. Katch was deprived of a guardian, this is a circumstance certainly where she left home when she was 14, and during the period of the next 10 years, the record shows she affirmatively tried to stay away from her parents, tried to stay away from any authorities. So I think it's certainly an extraordinary set of factual circumstances, but it doesn't warrant any departure from the Kubrick standard of looking to what an objective person or, excuse me, looking objectively at what a reasonable person would apprehend with regard to their injuries. I don't believe it rises anywhere close to the level of triggering the federal equitable tolling that this Court applied in Lakeview-Arnold. This is not a situation where essentially the person who had been designated to care for or make decisions for the plaintiff caused the harm, so to speak, as in Lakeview-Arnold, where it was the guardian who authorized the sterilization. I think essentially to accept plaintiff's argument in this case and to do away with the application of the objective standard where there are unusual circumstances would cause a lot of uncertainty with regard to the application of statute of limitations and accrual of actions. In plaintiff's brief, they fixed the accrual of the actions at March 21, 2006, because that's the date that she was taken from the house by the police department. That date could have moved one way or the other. We heard today that she required extensive therapy after she left. So in plaintiff's argument, if it's accepted, will, I think, considerably cause the issue of accrual to be cloudy. You said that we should apply state tolling. If you look at these facts, however you categorize them, extraordinary, they're not facts that you're going to see packaged together very often. Your opposing counsel has indicated that the statute for suits by minors was passed in 2002, providing 12 years. Four allegations regarding sexual abuse. The facts show that in 2000, Ms. Katch went to see an attorney to get some advice. Now, just the mere fact that she went to see an attorney to get some advice might cut against her own argument. But if, in fact, you believe that she didn't know what she had done was wrong until the attorney advised her that, wouldn't that date, if it was used, get her within the two years and extend the statute up to 12 years? It would, except that I think if that argument was accepted, we would be doing away with entirely the Kubrick analysis, which is typically applied in this circuit, of looking objectively. Objectively, here's what the facts, the strange fact pattern as it plays out, is that they carried on this relationship in secret, that she had to leave her house, that she stayed in his bedroom, did not make herself known to the public. They kept this secret. There was some awareness on both their parts that this was an improper relationship. In March of 2000, the undisputed facts indicate that she was going out into the community. So, again, I think that also bears on your suggestion that there's some indication here that she was able to make some decisions or that she was able to venture out on her own. With regard to the allegation that Dr. Bernstein, that his report should put this within the purview of Miller and Lake, I think it's glaring that his report does not conclude that she's mentally incapacitated. It concludes that she was bereft of her cognitive faculties and associated capacity for normal adult judgment. There's no specifics put on when that began or when that ended. I don't believe that meets the mental incapacity standards that either this panel found in Miller or in Lake. The other thing, I think, with regard to the application of the state statutes, is that one benefit Ms. Katch had that was not available either to the Miller plaintiff or the Lake plaintiff is that she did get the benefit of the two-year tolling from the time that she reached the age of majority to when she reached the age of 20. The indication that she wanted to have consultation with an attorney to see whether or not she could marry Tom Hose took place when she was still 18 years old. So to that end, I think that there was evidence of record which supports Judge Lancaster's finding, in this case, that her causes of action accrued in 1996, that they were told only until the age of her majority, and that the periods of limitations were in 2001. Thank you. Thank you. May it please the Court, my name is Jeanette Ho. I represent the City of McKeesport, E. Michael Elias, and Tom Carter, in his capacity as the Chief of the McKeesport Police Department. Unless the Court has questions on the statute of limitations issue, I'd like to address the substantive state-created danger claim that Ms. Katch is attempting to bring against my clients. As this Court is well aware, there are four elements to the state-created danger test, and it's my contention that Ms. Katch is unable to meet all of them. I'll focus first of all on the Affirmative Act requirement. Ms. Katch claims that the City of McKeesport Defense committed an Affirmative Act because Mr. Elias supposedly prevented CYS from becoming involved in her case. I would submit that a review of the record establishes that there is no evidence to establish that Mr. Elias prevented CYS from becoming involved in Ms. Katch's case. Specifically, I would refer the panel's attention to SA-145, which is an excerpt from Mr. Elias' deposition testimony. The question by Ms. Katch's counsel, do you deny telling the CYS worker at this time not to get involved? Mr. Elias' answer, I do not say to not get involved. CYS is already involved. I have no power or authority to tell CYS they cannot get involved. Ms. Katch's attorney or Ms. Katch claims that there is evidence in the record to establish that Mr. Elias did tell CYS to get involved. The only support that Ms. Katch points to in support of that contention is notes that were supposedly prepared by an unidentified CYS caseworker. First of all, I would submit to this Court that those notes cannot be given any consideration because they are hearsay and there is no evidence in the record that they would ever be made admissible at trial since Ms. Katch has never identified the CYS caseworker and has never even obtained an affidavit or a deposition from him or her. Secondly, Ms. Katch claims that the business record exception has been met here.  to establish that the requirements for the business record exception have been met. Specifically, there is no evidence that these notes were made at or near the time that the conversation took place with Mr. Elias and this individual. Even if the Court were to find that there was an affirmative act here, there is no causal connection between the conversation with Mr. Elias and the CYS caseworker and Ms. Katch's claimed harm. This is established by the fact that the conversation did not create the opportunity or make Ms. Katch more vulnerable to becoming involved in a relationship with Mr. Hodes. That relationship had been in place long before this conversation ever took place. Mr. Elias' conversation had no bearing in its development or its continuation. Any contention that somehow the CYS caseworker would have found out about the relationship is pure speculation which would not support the denial of summary judgment in favor of the City of McKee's Court defendants. Also, building on that conversation, there is also no foreseeability. There is no evidence that Mr. Elias, at the time this conversation took place, knew anything about any relationship between Ms. Katch and Mr. Hodes. In fact, the only thing that he knew about any connection between the two was Mr. Hodes telling Mr. Elias that Ms. Katch had accused him of either molesting her or acting inappropriately towards her. I submit that it's not foreseeable that someone who has accused another of molesting or acting inappropriately towards them would become involved in a romantic relationship with them or decide later on to run away to live with them. Also, any conversation that took place also does not satisfy the shocks of conscience. Again, there's no indication that Mr. Elias knew anything about this which would constitute deliberate indifference or even any higher standard that this Court might apply to the shocks of conscience prong of the state-created danger theory. So I would ask that in the event this Court finds that the statute of limitations did not run at the time that Ms. Katch brought her suit, that they instead affirm the District Court's entry of summary judgment on the basis that Ms. Katch has failed to establish a constitutional violation. Thank you. Thank you. I just wanted to correct the record on a matter that was brought up by Judge Fisher. It was not Ms. Katch who went to see an attorney in 2000. It was Ms. Katch's statement in her deposition that Thomas Hose told her that he went to see an attorney in 2000 to discuss their situation and their relationship. So in other words, the extent to which she was controlled by this man, he went to the attorney, so he said to her, but he never went. When you look at his deposition testimony, he says, I might have told her that, but I didn't go to an attorney. That's the extent of control we're talking about here. So it really is surprising to hear over and over again the word relationship used in connection with the interaction between Thomas Hose and Tanya Katch. It is hard to imagine how a 37-year-old man raping a 14-year-old girl is a relationship. Finally, concerning the applicability of tolling and lake and so forth, I would look to the most recent case by this circuit, Santos v. United States. This was decided in March of 2009 at 559 Federal 3rd 189, 183. I give that site because it's not in our brief because this is a recent case. In Santos, another Federal Tort Claim Act case, very unremarkable facts. The child's mother filed in the wrong form and tolling was applied by the Third Circuit in Santos. Very unremarkable facts when compared to the unimaginable situation that Ms. Katch faced. In the fragile world of a child's existence, there is nothing as terribly awful as an injustice. For this reason, and such is the reason equitable tolling and accrual should occur in this case, such is the reason that we respectfully request that this case be remanded for proceedings on the merits. Thank you very much. Thank you all of counsel for your helpful arguments and briefing in this matter, which we will take under advisement. We have no further matters for the day. And so I'm going to ask the clerk to adjourn the proceeding.